UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

MICHAEL GUZMAN,

                                            Plaintiff,      **AMENDED COMPLAINT &**
                                                          **JURY DEMAND**

                    -against-                      **15-CV-2662 (KAM) (VMS)**

CITY OF NEW YORK, POLICE OFFICER LESZEK
DADURA #4784,

                                            Defendants.

------------------------------------------------------------------------ x

Plaintiff Michael Guzman by his attorneys, Stoll, Glickman & Bellina, LLP, for his Complaint alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which Plaintiff seeks relief through 42 U.S.C. § 1983 for the violation of his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a September 21, 2013 incident in which a New York City Police Department ("NYPD") Officer of the Transit Bureau, Transit District 30 Command, acting under color of state law, intentionally and willfully subjected Mr. Guzman to false arrest and violated his right to freedom of speech.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4), 1367(a), and the doctrine of pendent jurisdiction.

## VENUE

6. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

7. Plaintiff MICHAEL GUZMAN is a resident of Bronx County in New York State.

8. The CITY OF NEW YORK ("CITY") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention, and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Defendant LESZEK DADURA was at all times here relevant a police officer of the NYPD, and as such was acting in the capacity of agent, servant, and employee of the City of New York. On information and belief, at all times relevant hereto, Officer Dadura was involved in the decision to arrest Plaintiff without probable cause. Officer Dadura is sued in his individual capacity.

10. At all times here mentioned defendant was acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

11. On September 21, 2013, at approximately 5:50 P.M., Mr. Guzman was standing on the number 2 train platform inside the Borough Hall station in Kings County.

12. Mr. Guzman observed that Defendant Officer Dadura had detained several civilians, all of whom were unknown to Mr. Guzman. The individuals were sitting on a subway bench on the platform with their hands behind their backs. The detainees appeared frightened.

13. From a distance of more than ten feet away, Mr. Guzman spoke to the civilians, asking them if they were all right, and if there they wanted him to contact anyone on their behalf.

14. Officer Dadura told Mr. Guzman that what he was doing was illegal. At this point, Mr. Guzman began to use the video recording function on his phone to record the encounter with the police officer.

15. The police officer walked away from the detained civilians, approached Mr. Guzman, and asked Mr. Guzman to "put the phone away."

16. Mr. Guzman, who is a community organizer and has received extensive training in lawful and peaceful police-civilian encounters, correctly replied that his actions were not illegal and that he has a constitutional right to record.

17. Officer Dadura told Mr. Guzman that the light attached to his cell phone was "blinding" him, so Mr. Guzman offered to step back even further.

18. Before Mr. Guzman could take a step back, Officer Dadura arrested him.

19. The officer grabbed Mr. Guzman's left arm and twisted it hard behind Mr. Guzman's

back.  Mr. Guzman continued to record and narrate the encounter while holding the phone in his right hand.

20. The officer grabbed Mr. Guzman's right arm, twisted it behind his back, and took Mr. Guzman's phone out of his hand.  After both of Mr. Guzman's hands were behind his back, the officer pushed him up against a wall and placed him in handcuffs.  He then led Mr. Guzman to a bench on the platform and allowed the three civilian detainees to leave the station.

21. Mr. Guzman was escorted to a patrol car and taken to the 84th Precinct.  At the precinct, Mr. Guzman did not consent to a search of his person or his belongings, and asked for an attorney.

22. Mr. Guzman was placed in a holding cell.  His belongings were taken and vouchered.  His cell phone was taken apart and placed in a separate bag.

23. While waiting in the holding cell, Mr. Guzman requested medical attention because his shoulder felt hot and sore.  Police officers ignored his request.

24. Approximately three hours later, Emergency Medical Technicians ("EMTs") arrived.  They told Mr. Guzman that they had just received a call requesting medical attention.

25. After examining Mr. Guzman, the EMTs placed Mr. Guzman's arm in a sling and took him to the hospital in an ambulance.

26. At the hospital, a nurse examined him, gave him medication for his pain and inflammation, and released him back to the custody of the NYPD.

27. Defendant officer misrepresented to the Kings County District Attorney's Office that Plaintiff was within ten feet of the officer and that Plaintiff refused to step away from the officer.  In fact, Mr. Guzman was filming the officer from more than ten feet away and volunteered to step back even further – but before he could back up, Officer Dadura arrested him.

28. Mr. Guzman was arraigned the following day, September 22, 2013, in Brooklyn Criminal Court. The judge released him on his own recognizance. He was in police custody for more than 24 hours.

29. On March 10, 2014, Mr. Guzman's case was dismissed and sealed by the Honorable Michael Gerstein.

30. During all of the events above described, the defendant officer acted maliciously and with intent to injure Plaintiff.

## DAMAGES

31. As a direct and proximate result of the acts of defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of his rights pursuant to the First Amendment of the United States Constitution to freedom of speech;

   b. Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

   c. Violation of his rights pursuant to the Fourth, Fifth, and Sixth Amendments of the United States Constitution to a fair trial;

   d. Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

   e. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

   f. Loss of liberty; and

   g. Physical pain and suffering.

## **FIRST CAUSE OF ACTION**
42 U.S.C. § 1983
FALSE ARREST & EXCESSIVE FORCE

32. The above paragraphs are here incorporated by reference.

33. The officer Defendant wrongfully and illegally arrested, detained, imprisoned, and falsely charged Plaintiff.

34. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

35. During the course of the arrest, Officer Dadura used excessive force against Plaintiff, causing Plaintiff to seek medical treatment.

36. At all relevant times, Defendant acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

37. All of this occurred without any illegal conduct by Plaintiff.

38. The officer Defendant acted under color of law and in his individual and official capacities and within the scope of his employment as an NYPD officer. Said acts by the officer were beyond the scope of his jurisdiction, without authority of law, and in abuse of his powers. Said defendant acted willfully, knowingly and with the specific intent to deprive Plaintiff of his constitutional and statutory rights to be free from unreasonable search and seizure and to due process of law pursuant to the Fourth and Fourteenth Amendments secured by the United States Constitution, and are liable to Plaintiff under 42 U.S.C. § 1983.

39. As a direct and proximate result of the misconduct and the abuse of authority detailed above, Plaintiff sustained the damages described above.

## SECOND CAUSE OF ACTION
42 U.S.C. §1983
FREEDOM OF SPEECH VIOLATION

40. The above paragraphs are here incorporated by reference.

41. Officer Dadura arrested Plaintiff in direct retaliation for the content and viewpoint of Plaintiff's speech, without probable cause to arrest him for any offense, and in violation of his right to freedom of speech.

42. Defendants' conduct deprived Plaintiff of his rights under the First and Fourteenth Amendment to the United States Constitution. Defendants are liable to Plaintiff under 42 U.S.C. § 1983.

43. Plaintiff has been damaged as a result of Defendant's wrongful acts.

## THIRD CAUSE OF ACTION
42 U.S.C. § 1983
DENIAL OF FAIR TRIAL

44. The above paragraphs are here incorporated by reference.

45. The individual defendant fabricated false evidence against Plaintiff and forwarded such false evidence to the Kings County District Attorney's Office.

46. Defendant was aware or should have been aware of the falsity of the information used to prosecute Plaintiff.

47. As a result of Defendant's false statements, Plaintiff fought false charges for approximately four months.

48. Defendants' conduct deprived Plaintiff of his right to a fair trial, pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Defendants are liable to Plaintiff under 42 U.S.C. § 1983.

49. Plaintiff has been damaged as a result of Defendants' wrongful acts.

## **FOURTH CAUSE OF ACTION**
### 42 U.S.C. § 1983
### MUNICIPAL LIABILITY

50. The above paragraphs are here incorporated by reference.

51. The City is liable for the damages suffered by Plaintiff because, after learning of its employees' violations of New Yorkers' constitutional rights, the City has: failed to remedy the wrong; created policies or customs under which unconstitutional practices regularly occur and even thrive; and has been grossly negligent in managing subordinates who cause the unlawful events. The result of the City's inaction is a culture within the NYPD where the same officers, the same units, and the same precincts repeatedly and routinely engage in acts of misconduct. By failing to properly train, supervise, and discipline its employees, agents, and servants, the City effectively encourages illegal, immoral, and unprofessional behavior.

52. The City has been aware for some time – from civil rights lawsuits, Notices of Claim, complaints filed with the Civilian Complaint Review Board ("CCRB"), City Council hearings, newspaper reports, criminal cases resulting in declined prosecutions and dismissals, and judicial rulings suppressing evidence and finding officers incredible as a matter of law – that a disturbing number of NYPD officers unlawfully search and seize New Yorkers without probable cause, arrest individuals in retaliation for filming the conduct of police officers, bring charges against New Yorkers with no legal basis, perjure themselves in charging instruments and through testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

53. Despite having acquired such knowledge, the City has refused to appropriately sanction its employees' illegal behavior.

54. The City's deliberate indifference to civil rights violations committed by individual police officers, as well as patterns of misconduct committed by the same officers or occurring in

the same precinct has caused the constitutional violations against Plaintiff in this case.

**THE CITY FAILS TO TRACK CIVIL RIGHTS LAWSUITS, THEREBY SEVERING ANY POTENTIAL DETERRENT VALUE**

55. For decades, the City has been on notice that certain officers and precincts are disproportionately responsibility for civil rights lawsuit liability. Nonetheless, the City has failed to take action to hold officers or precincts accountable.

56. In 1999, Comptroller Alan Hevesi, in a memo to Police Commissioner Howard Safir, stated that there was "a total disconnect" between the settlements of civil claims – even substantial ones – and NYPD discipline of officers.[1] Hevesi continued:

> As a result, the NYPD does not learn of potential problem officers, fails to take curative action, and not infrequently fosters a situation in which an officer will engage in another act of violation, resulting in harm to another person and further damages from the City. More important, study of a large number of cases might well reveal patterns of misconduct against which the NYPD could and should take systematic management action.[2]

57. The Comptroller recommended that the police department "analyze . . . settled claims, and take steps to review the officers' performance and propensity to commit acts of excessive force."[3]

58. The City has not heeded Hevesi's advice, and the "total disconnect" remains fully in place today. The number of claims against the NYPD has doubled in recent years, costing taxpayers more than $1 billion.[4]

---

[1] *Id*.

[2] *Id*.

[3] *Id*.

[4] *See* Barry Paddock, Rocco Parascandola, John Marzulli, & Dareh Gregorian, *Exclusive: Detective is NYPD's most-sued cop, with 28 lawsuits filed against him since 2006*, N.Y. DAILY NEWS, Feb. 16, 2014, http://www.nydailynews.com/new-york/lawsuits-nypd-double-decade-costing-taxpayers-1b-article-

59. Yet the City continues to resist attempts to catalog even the most basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. Although certain police officers, units, and precincts have been found to have violated New Yorkers' constitutional rights *repeatedly*, the City refuses to track the data, or even to use the data it already has.[5]

60. Courts – including this nation's highest court – assume that civil rights lawsuits deter police misconduct. *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.") (citing *Carey v. Piphus,* 435 U.S. 247, 254-257 (1978)); *Hudson v. Michigan*, 547 U.S. 586, 598 (2006) ("As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts.") (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) and *Nix v. Williams,* 467 U.S. 431, 446, (1984)).

61. However, because the City of New York refuses to track civil rights lawsuits, such suits

---

1.1615919#ixzz2ttdX4ZkE (reporting that the number of claims against the NYPD doubled between 2004-2014, to a record high of 9,570 lawsuits filed in 2012, costing taxpayers nearly $1 billion); Colleen Long & Jennifer Peltz, Associated Press, *Nearly $1B in NYC police payouts*, Yahoo! News (October 14, 2010, 7:44 PM), http://news.yahoo.com/ap-investigation-nearly-1b-nyc-police-payouts.html (reporting that, in the decade ending in 2010, the City paid out nearly one billion dollars to resolve claims against the NYPD); Caroline Bankoff, *The City Has Paid Almost Half a Billion Dollars in NYPD-Related Settlements Over the Past 5 Years*, NYMag.com, Oct. 12, 2014, http://nymag.com/daily/intelligencer/2014/10/428-million-in-nypd-related-settlements-paid.html (reporting that, between 2009-2014, New York City paid out more nearly $500 million to settle NYPD-related cases); see also City of New York, Office of the Comptroller Claims Report FY 2012, 30, June 4, 2013, https://www.documentcloud.org/documents/1375759-fy-2012-claims-report.html (noting that, in fiscal year 2012, so-called "police action claims," which are claims that result from false arrest or imprisonment, police shootings, excessive use of force, assault, or failure to protect, cost the City $64.4 million, and that in fiscal year 2011, the City paid out $60.2 million in police action claims).

[5] *See, e.g.*, Barry Paddock, et al., *Exclusive: Detective is NYPD's most-sued cop, with 28 lawsuits filed against him since 2006*, N.Y. DAILY NEWS, Feb. 16, 2014, http://www.nydailynews.com/new-york/lawsuits-nypd-double-decade-costing-taxpayers-1b-article-1.1615919#ixzz2ttdX4ZkE ("The [Daily] News' investigation was centered around the results of a Freedom of Information Law request for a list of lawsuits filed against officers who have been sued 10 or more times over the past decade. The city Law Department provided the names of 51 officers and 463 cases. A News search found an additional 146 cases against the officers, and four other officers who should have been included in the response — calling into question the city's ability to track these cases.").

do not serve the deterrent purpose envisioned by the Supreme Court.

62. Civil rights lawsuits against NYPD officers have no impact on the officers' careers, regardless of the expense to the City to defend a police misconduct case, and even when the same officers are named in multiple lawsuits, because settlements of civil claims are ordinarily not even noted in an officer's personnel file.[6]

63. By failing to keep track of crucial data – which could save lives as well as taxpayer money – the City has created a system in which lawsuits are severed from any potential deterrent effect.

**THE CITY FAILS TO DISCIPLINE OFFICERS WHO COMMIT PERJURY AND FALSIFY OFFICIAL RECORDS**

64. The City is liable to Plaintiff for its failure to keep track of judicial decisions in suppression hearings where police officers have been found to have fabricated testimony.

65. There are hundreds of published decisions from the past several years in which judges in New York City courtrooms determine that, as a matter of law, police officers have testified incredibly, conducted illegal searches and seizures, and even suborned perjury.

66. Judicial decisions from suppression hearings and trials are particularly reliable indicators of a police officer's professional conduct and credibility because the testimony has been tested in open court, under oath.

67. Yet those in a position of authority – such as NYPD supervisors and prosecutors – have no procedure to notify individual officers or their supervisors of adverse judicial findings.

68. Without any notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes

---

[6] Association of the Bar of the City of New York, Committee on New York City Affairs, "The Failure of Civil Damages Claims to Modify Police Practices, and Recommendations for Change," March 2000, *available at* http://www2.nycbar.org/Publications/reports/print_report.php?rid=32.

ignored, and repeated misconduct by individual officers goes unaccounted for.

69. This has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. As the Honorable Jack Weinstein, United States District Court Judge of the Eastern District of New York, has written:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

*Colon v. City of New York*, No. 09-CV-8, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009).

## THE CITY FAILS TO HOLD POLICE OFFICERS PERSONALLY FINANCIALLY LIABLE, RESULTING IN A COMPLETE LACK OF ACCOUNTABILITY

70. The City of New York is also liable in this case because, by habitually indemnifying police officers who have acted unconstitutionally, the City isolates such officers from accountability.[7] The effect – yet again – is that civil rights lawsuits do not serve a deterrent purpose. "It is almost axiomatic that the threat of damages has a deterrent effect, *surely particularly so when the individual official faces personal financial liability*." *Carlson v. Green*, 446 U.S. 14, 21, (1980) [emphasis added] (citing *Imbler v. Pachtman*, 424 U.S. 409, 442 (1976)) [footnote omitted].

---

[7] *See* Eric Jaffe, *When Cops Violate Civil Rights, It's City Taxpayers Who Pay*, CITYLAB, Dec. 4, 2014, http://www.citylab.com/crime/2014/12/when-cops-violate-civil-rights-its-city-taxpayers-who-pay/383419/ (reporting that taxpayers almost always satisfy both compensatory and punitive damages awards entered against police officers).

**THE CITY HAS FAILED TO CREATE A MEANINGFUL POLICE OVERSIGHT AGENCY, THUS ALLOWING OFFICERS' UNLAWFUL BEHAVIOR TO GO UNCHECKED**

71. The City is liable because it has created a legal system in which officer misconduct routinely goes unpunished.

72. The City has purported to attempt to address police officers' abuse of authority, in part through the creation of the CCRB, a police oversight agency with investigative powers.

73. However, the CCRB has proved vastly inadequate.

74. First, the CCRB fails in its mission because it often has found that complainants "lack credibility" based on the fact that the complainant has also brought a civil rights lawsuit. The result is that the CCRB often fails to substantiate some of the most serious allegations.

75. Second, when the CCRB has determined that officers have made false statements to the CCRB in their own defense, the CCRB virtually never initiates its own findings against those dishonest officers. The same is true in situations where the CCRB finds that officers have failed to report their fellow officers' misconduct.

76. Third, because the CCRB's penalty recommendations are purely advisory and there is no enforcement mechanism, the recommendations have no binding effect on the NYPD or its officers. Even when the CCRB substantiates complaints, the police department rarely imparts its own discipline on the officer, and often simply drops the complaints.[8]

77. Fourth, the NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore,

---

[8] *See* Nathan Tempey, *CCRB: Cop Who Shoved Kid Through Hookah Bar Window Used Excessive Force*, gothamist, July 28, 2015, http://gothamist.com/2015/07/28/bronx_hookah_window_ccrb.php (reporting that in 2014, the CCRB substantiated only 327 of nearly 5,000 complaints, and that the NYPD disciplined 10 2 officers in that same period. Of the officers disciplined, only 22 faced administrative charges); WNYC.org, *Police Punishment: CCRB vs NYPD*, http://project.wnyc.org/ccrb/ (last visited July 23, 2015) (reporting that, in 2012, police officers received no discipline in 104 cases (40.3%) of the substantiated complaints processed (258); in 2013, the NYPD dropped 28.3% of the substantiated complaints without any disciplinary action; in 2014, it dropped 24.5%).

in the rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, a power the commissioner has wielded.

78. The complaint procedure provides seemingly countless opportunities for City agencies to dismiss or disregard legitimate, credible complaints.

79. Due to the failures of the CCRB, many abuses of authority by police officers go unreported. Officers are thus free to abuse their authority with little or no fear of repercussions.

80. Here, the lack of accountability contributed to the defendant police officers' actions described above in that the officer defendants knew they were insulated from any repercussions for their unlawful actions against Plaintiff.

**THE CITY HAS ENCOURAGED UNCONSTITUTIONAL STOPS THROUGH ITS USE OF ARREST QUOTAS**

81. The City has also been alerted to the regular use of "Stop, Question, and Frisk" by its police officers, which disproportionately target people of color, despite the humiliation, inconvenience, and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result.

82. Even as the use of "Stop, Question, and Frisk" has declined precipitously in recent years – in large part due to the federal class action lawsuit *Floyd, et al. v. City of New York, et al.*, 08-CV-1034 (SAS) – the police have continued to use the policing tactic in a severely racially disproportionate manner, and for the improper purpose of meeting "performance goals" (more commonly known as arrest quotas).

83. According to data collected by the New York Civil Liberties Union ("NYCLU"), in 2014, New Yorkers were stopped by the police 46,235 times. Of the people stopped: 38,051 were totally innocent of any crime (82%); 24,777 were Black (55%); 12,662 were Latino (29%);

14

and 5,536 were white (12%).[9]

84.   The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people.  For example, the NYCLU reported that more than 85% of summonses for Open Container were given to Black and Latino New Yorkers, whereas white recipients made up merely 4%.[10]   The grossly disproportionate issuance of summonses to New Yorkers of color led one Kings County judge to note that he could not recall ever having arraigned a white defendant on an open container charge.[11]

85.   Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals," resulting in the violation of innocent New Yorker's civil rights.[12]

86.   The City's inability to prevent its officers from abusing the stop and frisk policy is emblematic of the City's continuing failures to exercise adequate control over the NYPD, and to prevent police officers from abusing their authority.  Such failures have led to further abuse of authority by police officers, including the incident underlying Plaintiff's Complaint.

87.   Upon information and belief, the City failed to impose any sanctions or punishment on Defendants as a result of these prior lawsuits, resulting in a total lack of accountability and instilling a belief in Defendants that there are no consequences for violating the civil rights of the people they are supposed to protect.  That belief contributed to Defendant's conduct towards

---

[9] *See* NYCLU, *Stop and Frisk Campaign: About the Issue*, http://www.nyclu.org/content/stop-and-frisk-data (last visited July 22, 2015).

[10] See NYCLU, *Testimony Before City Council Public Safety & Courts and Legal Services Committees On Summons Court Operations and Impact*, http://www.nyclu.org/content/testimony-city-council-public-safety-courts-and-legal-services-committees-summons-court-oper.

[11] *People v. Figueroa*, 36 Misc.3d 605, 608 (Kings Co. 2012).

[12] *See* Jim Hoffer, *NYPD Officer Claims Pressure to Make Arrests*, WABC News ( (Mar. 2, 2010, 10:37 PM), http://7online.com/archive/7305356/ and Jim Hoffer, *Kelly Responds to Our NYPD Quotas,* WABC News (May 25, 2010, 3:31 PM), http://7online.com/archive/7461355/.

Plaintiff in the instant case.

88. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate Plaintiff's civil rights, without fear of reprisal.

89. Plaintiff has been damaged as a result of the City's deliberate indifference.

WHEREFORE, Plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

B. Awarding Plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:   October 5, 2015
         Brooklyn, New York                    Respectfully submitted,

TO:   City of New York                         STOLL, GLICKMAN & BELLINA, LLP
      **ATTN: Joseph Gutmann**
      100 Church Street
      New York, NY 10007                       _____
                                               Amy Robinson
                                               475 Atlantic Ave, 3rd floor
      Officer Leszek Dadura, # 4784            Brooklyn, NY  11217
      Transit Bureau                           (718) 852-3710
      Transit District 30 Command              arobinson@stollglickman.com
      Hoyt/Schermerhorn Street Station         *Attorneys for Plaintiff*
      Brooklyn, NY 11201

16